Case number 22-2965 from Nebraska, United States v. Scott Nielsen First of all, counsel, I think this case was rescheduled from Friday, and I want you to know that the court really appreciates your cooperation in arranging for the rescheduling. It's much appreciated. All right. Ms. Smith, you may proceed. Good morning, Your Honors. Counsel, if you can't please the court, I'm Rebecca Smith, attorney for the appellant Scott Nielsen. This appeal centers on three crucial points. First, whether the search was done was an investigatory search or an inventory search, when the search actually began, and if law enforcement could legally search the Black case. Scott Nielsen was arrested on an outstanding state warrant on December 21, 2020, while standing in a dumpster on private property. Sarpy County Deputy Earl Johnson took Nielsen into custody and placed him in his patrol car. There was no issue of searching the vehicle for officer safety, as Nielsen was never in or near the vehicle any time the deputy was present. In determining whether a search is an investigatory search or an inventory search, case law establishes some guidelines. State v. Briggs required the state to show a search falls within the inventory search exception, required that the policy or practicing government inventory searches should be designed to produce an inventory and to limit officer discretion, and required an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. In U.S. v. Taylor, the court found, even if the police fail to adhere to standardized procedures, the search is nevertheless reasonable, provided it is not a pretext for an investigatory search. However, there is something to suggest that the police raised the inventory search banner in an after-effect attempt to justify a simple investigatory search for incriminating evidence, then the inventory search is unreasonable. What about, so pretext is a term with many meanings, but perhaps the best example is in sort of the employment discrimination concept, so I'm not asking you to go down that road, but I guess my question is there is a line of cases about mixed motives in employment discrimination. So the motive is both discriminatory and because it's a bad employee. And here you have a similar scenario where you have a motive that is investigatory, but then also they want to inventory the, you know, what they're basically impounding so that nothing gets lost and they're not held responsible for some valuable piece of jewelry that gets stolen off the impound lot. What do we do if this is a mixed motive case? What do we do about it here? Where does our case law take us? I think the case law takes the court to look at what the totality of all of the evidence, was this a ruse or was this at least starting as a true inventory search? Because true inventory searches are allowed, ruses are not. So what about a situation here where they follow all the rules, they do the inventory search, they even thought that was one of their motives, but they also have an investigatory motive too. Is that, to me, I think our case law probably suggests that's not enough. The language you're using, which it has to be a ruse, in other words, no inventory search motive, has to be present in order to strike down the search. Am I right about that? No, that was not my intention. Okay. So how would you then characterize it? Would you characterize it as a mixed motive, as a problem as well? Yes. Okay. Thank you. There are a dozen facts in this case to show an officer is determined to do an investigatory search of the vehicle after being frustrated when all other efforts to build a case turned up nothing. The facts pointing towards an investigatory search begin with fact one, Deputy Johnson stated he was, quote, confident there was something in the Mazda truck. Fact two, Deputy Johnson searched all around the dumpster and investigated the truck bed and found nothing. Fact three, Deputy Johnson had a drug sniffing dog brought in, which circled the truck four Fact four, searching continued for another ten minutes, nothing was found. Fact five, Deputy Johnson admitted there was no probable cause to search the truck. Fact six, Deputy Johnson also determined there was no evidence to charge Nielsen with a crime. Fact seven, Deputy Johnson stated he would check with Jessica Moran, the owner of the truck, to see if she wanted to pick up the truck. However, the deputy never did this. Instead, a plan was implemented for the investigatory search to take place inside the truck in the guise of an inventory search. I wonder whether the opposite is true. All of those facts you just gave me could also indicate that the officer says, God, we brought in a dog, we searched around the trash can, the dog didn't hit, I give up. Time to do an inventory search. I had an investigatory motive, but now that nothing has come up, I give up, and we're going to inventory it and send it to the impound lot. I mean, isn't that a possible inference you could draw from all this evidence? It could in other facts situations. In this fact situation, the officer specifically had not made a decision to tow. He talked about returning the vehicle to having the owner come and get the vehicle, and he testified that his decision to tow happened after he was already inside the truck. Well, I don't know. For me, the big fact that you leave out in your recitation is that there was an active felony drug warrant, and he was placed under arrest. That is correct. So if you use that as your starting point, then you have law enforcement, they've got a vehicle on their hands, they have a policy, a written policy of the department. It's followed here. I think our cases would say that officers do not have to wait to summon another private individual, a friend or a relative, to come and retrieve the vehicle. So where am I missing the point here? You're correct, Your Honor, in that you do not have to wait. The police do not have to wait for someone to be summoned. However, in looking at the totality of all the facts, the officer stated that he was going to be... Well, they don't. It's not only do they not have to wait, they don't have to summon anybody else. And he did not. He made no efforts to call... It's going to end up being towed at some point, and when it's towed, under policy, it's to be searched. It would not have to be towed, Your Honor, because it was not the defendant's truck, it was on private property, it was not blocking traffic, and it could easily have been left there and there was no need to go and search the truck because it was not incident to arrest. Fact 8. Deputy Johnson had a conversation with another law enforcement officer on site and decided to ask Nielsen if he wanted his phone, which was in the truck. During the conversation, Deputy Johnson and the other law enforcement officer, a comment can be heard on the dash cam that sounds like, see if he wants his phone and he better. Fact 9. Deputy Johnson first testified that Nielsen asked for his phone. That changed during the testimony and misdepression hearing. From Nielsen asked for his phone to the deputy admitting the deputy was the one who asked Nielsen if he wanted his phone. Fact 10. The deputy testified that he entered the truck before he made the decision to tow the truck. That's crucial. The deputy testified he entered the truck before he made the decision to tow the truck. If there wasn't a plan to tow and there was no need for an inventory of the truck. Fact 11. Immediately upon opening the door to the truck, Deputy Johnson exclaims, holy crap, puts on rubber gloves, and a few seconds later, Deputy Johnson exclaims, holy shit. The phone was found next to a black bag on the passenger seat. Once it was found, there was no need to continue searching the vehicle. Since the reason alleged for opening the truck door was to retrieve Nielsen's phone, the actions and language of Deputy Johnson shows he was investigating, not retrieving. Counsel, does it make any difference in your analysis that a section of the department standard operating procedure provides that deputies shall tow vehicles from private property if the tow is the result of an arrest? That's page four. I believe the fact that, looking at the totality of all of the circumstances, that the court will see it was a ruse and that there wasn't any testimony was clearly that he had not made a decision to tow. And once a decision to tow was made, then perhaps he had a right to go ahead and go forward with that. But he had not said he was going to tow. In fact, he said the opposite, that he was going to contact the owner to come and get it. Deputy Johnson opens a zippered black case found inside the truck. The case contains cash and suspected drugs. Nielsen was not asked for permission to search the vehicle. And in fact, he could not have given permission because it wasn't his truck. While conducting the investigatory search of the vehicle, Deputy Johnson found the zippered bag. Nielsen was not asked about the zippered bag, if it was his property, before Deputy Johnson unzipped the bag. Nielsen has standing to challenge the opening of the zippered bag since there was no warrant and no permission from Nielsen to open it. This precedent is established in U.S. v. Davis when the court determined that Davis, a passenger in a rental car, did not have standing to stop the search of the motor vehicle, but he did have standing to challenge the search of bags in the car. Davis cites numerous Circuit Court of Appeals decisions where a passenger has reasonable  U.S. v. Barber, 11th Circuit, a passenger in a car has standing to challenge the search of a bag even if he lacked standing to contest the search of the car. U.S. v. Ireda, 5th Circuit, where neither passenger denied ownership of a duffel bag in the vehicle in which they were riding, they had not abandoned the bag and had standing to challenge the search of the bag. Further precedent is found in Florida v. Wells, and the Florida Highway Patrol has no policy respecting the opening of closed containers encountered during an inventory search, the search was not sufficiently regulated to satisfy the Fourth Amendment, and the contraband which was found in the suitcase was properly suppressed. The issue of opening containers during the search of a vehicle owned by another person is also addressed in a Nebraska case, U.S. v. Castano. Castano argued that an inventory search was illegal since the officer opened the container during the inventory. In Castano, the court did not have to decide the issue of opening containers during an inventory because the officer properly stopped the inventory and sought and received a search warrant, thereby making the issue moot. No attempt was made by Deputy Johnson to obtain a search warrant to search the vehicle at any time, even after the alleged inventory appeared to turn up items of contraband. The Appellee's brief focuses on cases where the inventory search was conducted after the decision to tow was made. That is not the facts in our case. In Nielsen, a search took place before the decision to tow had been made. Deputy Johnson testified as follows. Question. When did you make the decision to tow this vehicle? Answer. I believe about the time I got in the vehicle and got his phone out that he wanted to take with him. It just became obvious that there were items in there that did not appear to be, I'm trying Since Deputy Johnson had entered the vehicle to allegedly retrieve the phone, which was found next to the black bag on the passenger seat, there was no need to continue searching the vehicle. Deputy Johnson testified the chronology of events were 1. I got in the vehicle. 2. And got his phone out. 3. It seemed like items could possibly have been stolen items. Deputy Johnson testified that he thought he saw possibly stolen items inside the vehicle. Yet, what if any attempts were made to determine if the items were stolen? No one asked Nielsen about any stolen items, if they were his or if they were stolen. No asking of the owner of the vehicle if there was any items in there or any stolen items in there that were hers. What about if, I want to ask you before your time expires, what about if the officers don't have proper cause but they're performing an inventory search? So there's a container and you say, well I've got to find out if there's jewelry or something, a wallet in there or something like that, but I don't have proper cause to get a warrant. And that would be true if that situation was such that there was a decision to tow and an inventory. So it all goes back to that. Searching first, then deciding to call it an inventory. No charges were filed for stolen property. No stolen property was listed on the impact report. No stolen property was taken into police custody. Deputy Johnson found normal vehicle items, including the black bag, and wanted to see what was inside. There was nothing suspicious about the black bag and no reason to search it as considering it stolen property. Counsel, your time has expired. Thank you. And I had asked to reserve three minutes. Well, you have to keep track of your own time. Okay. Thank you, Judge. Sure. Mr. Meyer. Thank you. May it please the court, public and counsel, my name is Joe Meyer. I'm a special assistant United States attorney here in the District of Nebraska. I represent the appellee, United States of America. The district court was correct in finding the search of the Mazda pickup did not violate Mr. Johnson's constitutional rights. Search was a valid inventory search because deputies followed standard operating procedures in effect at the time. Standard operating procedures on page two of that exhibit number two established that the vehicle was being taken into custody, and as Judge Shepard pointed out, it expressly allowed a tow in that situation from private property. The standard operating procedure required search prior to towing, required search of all containers inside the vehicle. You can see this is a, as Judge Strauss described it, a mixed motive case. Yes, Your Honor. That's where I was headed to next. From the AROCA case that I cited in my brief, in that case, this court held that an investigative motive does not invalidate an otherwise properly inventory search. I think the case law is that for an inventory search to be deemed pretextual or a ruse or any of the number of the words that we want to use, the sole motivation has to be an investigative motive. So, using Judge Strauss' terms of mixed motive, mixed motive, as long as standard operating procedure was followed or otherwise the search was reasonable, I believe this court needs to depart. What if the, you know, I think it's very hard to figure out the judge's motives, but Supreme Court precedent, or the officer's motives, Supreme Court precedent requires you to do that. What if he says, you know, before he gets in there, follows the inventory search procedures, but he says, gosh darn it, I'll bet you there's drugs in there, or a gun, whatever, and I'm going to go find it. But he follows all the inventory search procedures. Is that search permissible in your view? Yes, Your Honor. I think subjective intent, I don't believe that would apply with Wren and the other Abina cases. You know, ultimately in Fourth Amendment cases, the question is the reasonableness of the officer's actions. So, it's not even about pretext then. I mean, what you're doing, I think, is reading out the pretextual requirement from our cases. Because if that's true, then this is really about just following the inventory search procedures. And you can commit in an inventory, or do an inventory search, as much as you want, ad nauseum, even if you have an investigatory motive. Is that sort of what the government's arguing here? No, Your Honor. The case law has to be, quote unquote, something else. Something else that suggests it's an investigatory search under the cover of an inventory search. And you don't think saying, there's a gun in there, gosh darn it, I'm going to find it, assuming the gun, it's a felon, and he's trying to find proof, that doesn't cut it for the something else? Not in this case, Judge, on the totality of the circumstances. Because everything that comes back to in this case, I think as Judge Shepard pointed out, all comes back to a driverless vehicle after an arrest is made pursuant to warrant. Yeah, I mean, I don't disagree. We don't have a, gosh darn it, I'm going to find this gun or these drugs in this case. So I agree with you. I'm just trying to figure out how far it goes. Because that sounds awfully pretextual to me, where the person declares they're going to find contraband before they do the inventory search. I guess, like you mentioned, opposing counsel pretextual has a whole bunch of different meanings. I don't like to use that word. I would prefer to use the investigatory motive. Absolutely, there was an investigatory motive. That's why the drug dog was called. That's why the drug dog ran on the vehicle four times. And I'm not exactly sure why the deputy took these order of events. From the Petty case, I think that's where we end up with a decision known how it does not need to be made in quote, unquote, a totally mechanical fashion. And this court said, quote, it is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impound situation. So I think this is not your garden variety impound situation. I think it's complex. And it's a fluid situation. Deputy arrives with a suspicious person in a dumpster in a closed business. December 6, 20 at night, a dark, dark outside situation. That person comes out of the dumpster, is identified. That person has a federal, not federal, a felony drug warrant for possession with intent to distribute. That person then also has $2,400 in cash on their pocket. That's not your garden variety situation. This isn't your garden variety dumpster diver or scrapper as the deputies arrive. So the canine is called. The canine ultimately is distracted by some chicken bones or other traps in some dumpsters. And the canine doesn't alert. And at that point then, deputies are left back to the situation of an arrest pursuant to warrant and a driverless truck. Yeah, I think that's your better argument. Your better argument is that there may have been an investigatory motive, but the investigatory motive was gone by the time the inventory search was conducted. Or at least there was another motive present, which was inventory search at that point. And you think the record supports that characterization? Yes, yes. Counsel, does it make a difference here that Mr. Nielsen was not stopped driving the vehicle? He was not arrested within the vehicle? In fact, I think he was, wasn't he going through a dumpster? Yes, Your Honor. And the vehicle was nearby? So does that make a difference? And he told the officers that it belonged to a friend? Does that? Does that make a difference? Could that arguably take the vehicle outside of the towing policy? Because then officers, they're just on the scene and there's a vehicle nearby. And the person that's arrested was not in the vehicle. It's not associated with the vehicle. Does it own the vehicle? Does that eliminate the applicability of this towing policy? I think it's clear that he wasn't in the vehicle and that he's not an owner of the vehicle. Whether he was associated with the vehicle I think is not as clear. I believe the record made it clear that his cell phone at least was in the vehicle.  I think it's a fair assumption that he drove the vehicle there if he didn't in fact did not tell the deputies that. But to answer Your Honor's question, I don't think it takes out of the standard operating procedure because the Sheriff's Department's procedure is to tow a vehicle as a result when its driver is arrested. It's clear there was no one else on the scene. This vehicle was not parked in a place used by customers, not parked in a place normally associated where someone would normally park it. It was perpendicular to two dumpsters in the middle of the night. Not in the middle of the night, but in the evening hours. So under the standard operating procedure, deputies were ultimately required to tow it. The exceptions are discretionary. The first exception is that if the vehicle is not to be held as evidence, deputies in their discretion can release it to the registered owner or another responsible person. If that person is on the scene or can respond to the scene, that's not, the registered owner was not on the scene in this case. The second exception clearly doesn't apply. It's not lawfully parked to begin with and it's not parked in a place where it has been parked before. So under the standard operating procedure, no, I don't think just that it was an arrest without him in the vehicle changes that. Under the more just general reasonableness, no. Like in Petty, this was a case that was, the person arrested did not own the vehicle. Of course, deputies ran the vehicle, determined it was owned by someone else. He said he had access to it and he was allowed to borrow it. Deputies weren't sure if that was true. Deputies from the outside could see a number of items inside. It was dark at night outside of the closed business. And the deputies could very well have been legally responsible for that vehicle at that point. And he said the vehicle was not legally parked. Is that the blocking parallel to the dumpster and blocking access? Is that the reason it wasn't legally parked? I believe so, Your Honor. It is probably a private parking lot, but I believe it was perpendicular, not parallel. Yes. So, Your Honor, for all those reasons the United States asked you to affirm the district court, the search was done consistent with the standard operating procedure. Any investigative motive that there was had potentially dissipated or was not the sole reason that they decided to tow and that they entered the vehicle. I guess I'll get into that a little bit. Opposing counsel, I would just point out when you look at the cruiser video, Deputy Johnson was only in this vehicle for up to about a minute when he goes in to retrieve the cell phone. From the time where he asks Mr. Nielsen if he wants the cell phone, he then leaves Mr. Nielsen, goes to the truck, comes back, and then for sure tells Mr. Nielsen, hey, it's going to be towed, that's one minute. So, not subtracting the time he took to walk from the cruiser to the pickup truck, the pickup truck back to the cruiser, there's no evidence that a search occurred before the decision to tow. Deputy Johnson went to the vehicle for an express purpose to get Mr. Nielsen's personal items after asking Mr. Nielsen if he wanted his personal items, and then... What comments did the officer say at that point? Your friend on the other side referenced some comments. Was that during the recovery of the phone? There were two instances of the officer using expletives. First was when he initially went to the truck to get the phone. There was another during the inventory search. The second, I believe the record supports that the second was when the methamphetamine was found. What does the record say about the first? It's not entirely clear. It's not clear. I would assume that it's in relation to the number of items in the vehicle. Okay. So, unless there are any other questions from the bench, Your Honor, the United States asks you to affirm the district court's ruling in this case. Thank you. Thank you, counsel. Okay. Ms. Smith, I think you're out of time. Take a minute and wrap up if you would like. Thank you. Thank you. This court considered in U.S. v. Forehand just a few weeks ago somewhat similar situation looking at the attenuation doctrine. That doctrine requires three factors to decide if the search will be excluded or not. One, a short time passed between illegal stop and finding contact. We have that here in the Nielsen case. The court said that weighs in favor of suppression of search. Two, intervening circumstances unconnected to the stop. In this case, it was that Forehand had an arrest warrant for drugs and also in this case. However, in U.S. v. Struth, which was cited in Forehand, it talks about the arrest being necessary to search the vehicle for officer safety because the defendant was in the vehicle, not in an unsterilized way. Third, the flagrancy of official misconduct. And this is very different from the 12 facts. The fact in that case was simply that... I'm out of time. Thank you for your patience. All right. Thank you for your argument. All right, counsel. The case is submitted. The court will render a decision as quickly as possible. Counsel, and Ms. Smith, I want to express the thanks of the court for your service under the Criminal Justice Act in this case. It was my pleasure, Judge. Does that conclude our calendar of arguments this morning? Yes, it does, Your Honor. Very well. The court will be in recess until 9 o'clock tomorrow morning. Thank you.